The first case before us today is Doe v. Weiser. It is 25-1037. May I please the court? Josh Dixon on behalf of Appellants John and Jane Doe, I'd like to reserve three minutes for rebuttal, please. You will be responsible for keeping track of your own time. Yes, Your Honor, thank you. The district court here committed legal error in concluding that the Doe's lacked standing to seek preliminary injunctive relief against the law and the policy. This court should reverse and remand for entry of the preliminary injunction that we request. We have standing for four separate reasons, three of which relate to ongoing injury, one of which relates to future injury. Our first theory of standing for ongoing injury is that the law and policy, which give children the right to determine for themselves whether they want to undergo a social transition, the law and the policy take decisional authority away from the parents and give that to the child. What is your best argument for why the law and the policies apply to you now or apply to you at the time you filed your complaint? Well, they are in force at the moment. The effective date of the toolkit is, I believe it's August 2024, and there's no showing, there's no indication that that has been superseded. And the statute went into effect in April or May of 2024. So they're both in force right now. But don't your allegations need to establish that it's not speculative that AD is likely to invoke the law and the policies? In other words, that it's an opt-in scheme? That question regards future injury. I'm happy to jump to that point if Your Honor would like me to. Future injury, all we have to show is there's a realistic danger that the child will seek to be socially transitioned again. And our allegations establish that in spades with respect to both children, but particularly with respect to AD. She has identified as transgender for approximately five years. She was socially transitioned at school for two years. She no longer goes by a boy name, but she still feels like she has gender confusion. She doesn't identify as a boy, but she's not comfortable in a girl's body. And she's likely to continue having these experiences into adulthood. Are we switched to future injury? We have switched to future injury in response to the question, Your Honor. I'm sorry, I was getting a little whipshot. One question I have is the district court stopped at standing and never considered the other elements of injunctive relief. If we were persuaded that in fact there is standing here under any of the theories, what's the proper role for us? Do we continue in the first instance to consider each of the elements of the preliminary injunction standard? Or should we remand to the district court to consider those issues in the first instance? I believe on this record this court can conduct that analysis in the first instance. There are certainly cases from this circuit where that has occurred. The Sumnum case we cited in our brief, the Doe case that we also cited in our brief. This court can make that ruling on this extensive record. Your Honors have maybe 1,000 pages including expert reports, the CAS review, the DHS report. The record is extensive and the court can make the determination on the record as it stands. If the court doesn't feel comfortable with doing that, of course we would accept a remand, I guess a vacay tour with a remand. We have one expert and then we have an expert that's not really for this case, right? That's correct. We introduced an expert affidavit of Dr. Erica Anderson. The government appears to have downloaded an expert affidavit dated August 5, 2020 and submitted that in connection with their opposition. I submit that that affidavit is not probative given its date. I mean, the CAS review came out in 2024. 2020 was a long time ago. A lot has happened since then. Well, the Supreme Court just relied on it heavily, didn't it, in Schermatty? Exactly, Your Honor. The Supreme Court relied on the CAS review. That's what I'm saying. The affidavit that the government submitted is dated 2020. So it has been superseded by recent events, including the CAS review and the DHSS report. I'm sorry. I interrupted you, but going back to the standing. Of course, yes. So to continue on our first theory of ongoing injury, the state has taken decisional authority away from these parents, and it has done so in such a way that has harmed the family. The complaint alleges in paragraph 165 that the very enactment of the law and policy have sown seeds of doubt in these children's minds that their parents are looking out for their best interests. The parental right is a decisional right. That's what Troxell says. It is the right to make decisions in the lives of children. And this policy allocates that decisional authority to the children. Well, this is a substantive due process claim, right? And that is a fairly steep hill to climb, and we have been cautioned not to extend, find new areas. So the first thing that we have to do is we have to identify the particular right with enough particularity that it states the issue that's before us and see whether it is a longstanding recognized liberty interest. For standing purposes, this Court's precedent in the Gessler case teaches that we're supposed to assume the correctness and validity of our claim. Well, yes, we assume the correctness and validity of your claim. I don't disagree with that, but we have to identify the issue that we're dealing with to assess whether it's a substantive due process right. Our contention is that the parents have the due process right to consent when the state seeks to socially transition their children. That is the statement of the right, the right to consent when the state seeks to socially transition their children. And is that based on a thesis of the right as attendant to health care decisions? That's part of it, yes, Your Honor. Our contention, our allegation, and the evidence in this case supports the conclusion that social transitioning is a form of psychological treatment and parents have the right to control the psychological treatment their children receive. We have two additional theories, one being that even if not psychological treatment, the decision is such a significant decision in the life of the child that parents must have control over it. And the third is that the social transition interferes with the parents' rights to family integrity, all of which are housed under substantive due process precedent. And what is that, Troxell? What's the case you're relying on? Well, we're relying on several, Your Honor. Parham is the case that establishes the parents' right to control the health care treatment of the child. This Court's precedent in the Dubs case and the Wagner case, I think, J.P. Wagner case, established the rights over health care treatment. Many other cases establish the parents' rights to determine the significant life choices of the child, Troxell being one of them, the ability to control or the right to control parents, the associates who the child has, the Pierce case, the ability to send your children to private school, the Meyer case. This is at a high level of abstraction. Do you have any case you can point us to where a court has accepted your theory that this type of social transition, as you describe it, is health care? I cannot point to a case that holds how you have just defined it explicitly. But I do think that the due process analysis should proceed this way. The Supreme Court has long held that parents have the right to care, custody, and control of their children. The question here is whether the right that we are advocating for falls within the scope of that preexisting right, based on evaluation of whether the right is significant enough to fall within the confines of the principles of prior case law. And our case here establishes that social transitioning is a much greater even infringement on the parental right than these other cases I've been describing, Troxell, for example, the right to determine whether grandparents have visitation with the child. Obviously, that's a significant life event, but it's nothing like whether the child changes its gender identity. If you look at Troxell, there was a law that required the parent to allow visitation with the grandparent. Here, the argument is that these laws don't say one way or the other. They don't speak to whether prohibiting the parent, letting the parent know, it's up to the child to say whether they feel comfortable. The argument that the state has made is that the parental right is only violated when there's some coercive act. And again, the parental right at issue is the right to make decisions in the life of the child. Whether those decisions are being made by the child or by the state, the right is being infringed. And so coercion is not a necessary element of a parental rights claim. The case law that the district cites for this is the Anspach case and the Doe case. Those cases arose out of a child who sought contraceptives from a standalone public health clinic. This is a school. This is a completely different scenario. The child is handed over to the school. The school has custody and plenary control over the child during the school day. The school has preexisting relationships with children, with the parents where they can obtain the consent. Those precedents don't apply in the school context. And I'd also point out that the Foote case, the one that was recently decided out of the First Circuit regarding social transition, held that when the school engages in parental deception, that constitutes a restraining act that violates the Constitution. That's exactly what this policy does here. Let's assume that there is a fundamental right as you've articulated it. What I'm really struggling with is understanding how you satisfy the injury aspect of standing. Probably because I interrupted you. You jumped to the future injury. Help me better understand how your reliance on the chance that A.D. may re-transition, or her sister may decide to transition, how can that be a cognizable future injury that is not entirely speculative? I see my time is up with the three minutes reserved. May I answer the question? The future injury aspect of our claim is that this child, who is currently suffering from gender distress, there's a realistic danger, I should say, under the Supreme Court terminology, realistic danger, substantial risk, that she will seek to socially transition again and thereby invoke the law and policy. Thereby superseding, overriding, transcending, violating the parental right to be the one who controls. But don't you have to show in your allegations that there is a likelihood that she will invoke the policies and the law that she has? In order to establish future injury, we absolutely do, but the complaints allegations have very clearly done that. I mean, this child was socially transitioned for two years, only de-transitioned at the end of the last school year, is on the precipice right now. She still is experiencing gender confusion. She has, in the past five years, had periods just like this one where she no longer had a transgender identity. I mean, the standard cannot be the child is presently seeking to undergo a social transition. That would be actual injury. We're arguing future injury, and we're close enough that this court should hold that we have satisfied the requisite showing that it's substantially likely, realistic danger, this child and her younger sister will seek to socially transition again. The younger sister claim is not as strong, we acknowledge, but the allegations and the complaint are that the child is too young to know what having a transgender identity in her life would mean. The school, nevertheless, is encouraging her to think about this. She's unable to process it. Her friend group is very popular to identify as LGBTQ+. Teachers are encouraging these types of behaviors. And so even with a younger sister, she, too, is close enough that there's a realistic danger that she will seek to take advantage of this policy in the future. And as to the ongoing injury, is it your position that the law and the policies, because they exist, apply to A.D. right now, even if the allegations in your complaint do not suggest that she is presently or in the future intending to invoke them? It absolutely is, Your Honor. Under Clapper, Clapper holds that in the context of when the government is regulating a third party, the plaintiff, who is not being regulated, cannot manufacture standing by taking evasive measures to avoid the act. In this case, under the language of Clapper, the parents are being regulated, constrained, or controlled. This separates the case from Clapper, where in Clapper it was a third party who was being surveilled, and the plaintiffs sought an injunction against that surveillance of a third party on the IFCOM that they might be on the phone when the third party was being surveilled. Here, the parents themselves are being directly constrained by the policy insofar as their parental right is being abdicated or breached. And so the rule of Clapper that you can't manufacture standing does not apply here. And by the way, it's not mandatory. It is taking reasonable measures in light of what happened to this child. I mean, the child was on the verge of... You're out of time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Elliot Hood on behalf of School District 27J. I'm going to attempt to split my time with my colleagues at the AG's office, and I understand that I need to monitor my own time. So, Your Honors, there is... Let me ask... I want to start with a question. In looking at the issue of the realistic danger or the substantial risk of the child's death, the risk that AD may try to transition again, I find it interesting that the district court never discusses AD's declaration, which pretty clearly indicates that she is still struggling. What do we do with that? Isn't that relevant evidence for consideration of the standing issue here? I think it's relevant, but if you look at the totality of evidence that we have, including the verified allegations in the complaint, and the materials attached to the preliminary injunction motion in response, there is no reasonable likelihood of danger that she's going to take the speculative chain of events that would be required to enforce the policy. This is a child who, a year and a half ago, fully disavowed her decision to transition. She told... Well, she's been vacillating since the sixth grade. Well, but she actually hasn't, in the last year and a half, been vacillating. In middle school, she was struggling with her gender identity. Her freshman year of high school, she was identifying as a transgender male, and as of a year and a half ago, at the end of her sophomore year, she told folks at the school and her parents that she was done with that, and none of that has changed. She may be at home struggling still with her identity, and she may be still struggling with mental health concerns related to her gender identity, but she has not actually taken any concrete steps at all to go to the school to tell her parents that she's going back to being a transgender male, that she's going to ask that her name be changed. She hasn't said to anybody that I'm going to transition again, but she says, while I currently feel like a girl, there is a part of me that does not yet feel comfortable in a female body. I am trying to understand those feelings and get back to my prior self, but I have not yet figured out how to do that. I believe living as a boy at school for two years has made that process more difficult. This is a declaration that is pretty recent in terms of this issue, but it's a declaration that she's still struggling. So, this child may be struggling. Let's credit what she said in that declaration, and when she said it. As we must. As we must. That was months ago. She has not taken any steps at school to actualize that. She hasn't come to her parents and said, I'm changing course and going back to the way I was before. And what she's expressing is the possibility that maybe in the future, she might change her mind again. That's not enough to establish standing for ongoing or future injury. So, can you help me understand if this is the right way to be thinking about this? AD may still be struggling, as she says in her declaration and in the statement. So, can you question for us, for purposes of the standing inquiry, whether she's likely to or has invoked, opted in to the policies at the school? Yeah. The inquiry is whether the idea that she's going to invoke the policy at school is sufficiently imminent. Whether it's happening now, we know it's not happening now. For the future, it's whether it's sufficiently imminent, certainly impending. So, what would happen if AD's parents called up the school right now and asked, what name is my child using at school? What would the school's response be? They would treat that inquiry like any other parent calling to inquire about their kid at school. They would, first of all, that would be, if you're asking a specific question related to transgender identity, just like what their name they're using. I'm not. I'm assuming a universe where AD is no longer transitioning at school, and the parents just call and ask, what name is my child who attends this school using at school? What pronouns is my child using at school? So, they would, the person, presuming the person has access to her records, that person would pull up Infinite Campus and look at what information is reflected in Infinite Campus to see what her gender is, her name is. But they have another methodology by which they can change a name and gender pronouns and not make it accessible, right? To the parents, but the staff can. Right. So, Judge Rossman is saying, if I call up and I ask about what name my child is using at school, telling me I can go look at a site that might not be accurate. That's not what I, I'm sorry, I misspoke if that's what you heard. So, what I said was the staff will sit on the phone with the parent and answer their question, but they would not know how this student is called, what name the student is using in school. That would have to be a teacher or a counselor or someone who interacts with the student on a daily basis and knows what they're called in class or otherwise. So, the staff would, because parents have a FERPA right to information about their students. So, if a parent calls up, if I call up and ask for information about my child, the staff member would tell me over the phone, this is what we have in the child's records. Which may not be accurate. If the parents ask specifically about, is there a pronoun flag in the system, then the staff member should, because it's a record, go into the IC file, figure out where those tabs are and identify whether there is such a pronoun. And our policy, though, requires that we not out a student to their parents. So, and if the student has instructed staff to do that. So, in that rare occasion where the student has a pronoun flag and has instructed staff not to tell his or her parents about it, the staff would not confirm or deny the existence of the flag. They would say, you should have a discussion with your student about that. So, my question gets at how to understand the operation of the laws for purposes of thinking about the plaintiff's ongoing injury. And so, it seems, if I understand your answer correctly, that what you're saying is that the informational injury that the plaintiffs allege that arises from the existence of the laws requires the student to have opted in and invoked the chosen name law and policies. Correct. Absolutely. And if she has not done so, even though she may still be struggling with her gender identity, there is no informational injury currently. Correct. And it's completely speculative because they haven't done it. And if they did reach out, they're saying that the existence of the policies alone established future injury. Because the school has no information currently that either child, either student is identifying as transgender or gender questioning, the policy or the toolkit wouldn't even apply in that situation. And why doesn't the existence of the policy establish current injury? Because it's not being enforced, because the student has not come to the school and asked that they use a certain name. Based on the allegations in the complaint and the declaration and the evidence that we have. Correct. Can we look at past injury to inform future injury? We can look to past injury to inform the possibility of future injury. And we also, in terms of standing, the obligation changes over time. You have a lower burden when you file your complaint. Summary judgment, you have a little bit higher burden. And then you have an even higher burden if you survive summary judgment. Would you agree with that? I think that as facts develop, you have a higher burden to establish ongoing harm. And they haven't done so here. Okay. So if we look at, would you admit that there was past injury? I'm not going to admit past injury, but I will admit that they have standing to challenge the application of the toolkit during the time that ATE opted. But they're only looking for prospective relief. In my view, anyway, the past injury is only relevant to the extent that it is part of the analysis on future injury. You got it. Let me ask you one more question. One is, the district court didn't get beyond standing. I disagree with that. The district court did get beyond standing. It looked at all four of the factors under Winter. The district court understood standing as part of the likelihood inquiry, right? Correct. Yeah. No, but the district court actually did analyze all four of the factors. Okay. So you don't think there's any need for us to, if we were to say there is standing, to send it back for the district court in the first instance to have a robust analysis of the other factors? You could. I think that standing was the primary analysis, but the district court did address all of the elements. Okay. And then my other question is, in terms of whether this is medical treatment, does it matter that we don't have, that I have been able to find a diagnosis of any kind? It matters a lot, actually. And also, the school district implementing its policies is not engaging in any kind of clinical trials. It's not engaging in any kind of healthcare or medical treatment. So whether or not she's diagnosed with a condition at the end of the day doesn't mean that they're being injured by the school district's policies. Okay. Out of respect for my colleagues, I'm going to cede the rest of my time. Thank you very much, Your Honors. Good morning. May it please the Court. I'm First Assistant Attorney General Leigh Ann Morrill on behalf of the Attorney General. Page 40 of the Doe's reply brief before this Court conceded that the district court correctly concluded that the Attorney General lacks sufficient enforcement power under the chosen name law to bring him within the ex parte Young exception to sovereign immunity. That could be the beginning and end of this Court's inquiry on the issue of sovereign immunity for purposes of the preliminary injunction denial. Weren't you dismissed from the case? Yes, Your Honor. So isn't that the beginning and the end of it? You're not a party. And that order is not on appeal. That is correct, Your Honor. That is another basis for the Court to begin and end its inquiry. I do want to address the Doe's pivot where they pleaded with the district court to construe the first amended complaint to assert a remedy against the Attorney General because of alleged enforcement authority under the Colorado Anti-Discrimination Act. That pivot is highly problematic for both the district court and this Court to countenance for several reasons. First, it violates Rule 8 notice pleading requirements. No CAUDA claim was ever set forth in the original complaint or the first amended complaint that the Doe's filed as a matter of right in lieu of filing responses to all defendants' motions to dismiss the original complaint. For that same reason, it also violates Rule 15, which requires further amendment of their claims to be pursuant to leave of the district court, which they never sought at any time. Well, it's also not a final appealable order, is it? Exactly, Your Honor. And for that reason, this Court wisely declined to exercise pendant appellate jurisdiction over their attempt to appeal without permission the AG dismissal order, as I refer to it. At every stage of these proceedings, the Doe's have bypassed or attempted to bypass the rules of trial court or appellate procedure in order to force this Court's hand and the district court's hand to consider claims that they never raised. We ask the Court to reject that attempt and affirm the district court's denial of the PI order as to the Attorney General on sovereign immunity grounds. Additionally, I'd like to join my co-counsel in the clarification of the record at pages 20 to 21 of the PI denial order. The district court did address at length all of the other factors necessary to obtain a preliminary injunction, most notably the lack of an irreparable injury that the Doe's were imminently facing. The district court went through all three remaining factors and found that each of them, in particular the lack of immediate irreparable injury tipped in the defendant's favor in this case. The Attorney General's position is that this Court would not need to remand for further consideration of those. I thought it was the Commissioner's position that if we were to construe the district court's conclusion as only relating to standing, that an evidentiary hearing is requested and would be required. First, Your Honor, I do not speak for the Commissioner of Education. I only speak for the Attorney General. I do understand that the Commissioner did request discovery. I don't recall a specific request by the Commissioner for an evidentiary hearing, but ostensibly some discovery might lead to then a request for such a hearing. But the district court, in its opinion, concluded that no hearing is required under the Rule 65 or the precedence of this Court. I wanted to ask what your position was on how we should be thinking about the parent's FERPA right vis-a-vis the Chosen Name Law. FERPA is a right to information, as I understand it. Again, the Attorney General is not an educator. The Chosen Name Law vests public schools and local education providers with discretion to provide information on the right to adopt and implement policies to enforce the anti-discrimination provisions of the Chosen Name Law. That anti-discrimination right, essentially what the law does is it puts words in the mouths of public school employees and administrators, which is a core government speech function. The state can do that, and that's what it's done through the Chosen Name Law. But nothing about the Chosen Name Law limits or prohibits parents from exercising their informational rights under FERPA. And most notably, the record below, also the record on appeal to this Court, does not allege that the Doe's ever sought information about A.D.'s chosen name, pronouns, any attempts to socially transition her under the toolkit, which again, predates the Chosen Name Law by several years. They never requested such information. But when they did have conversations with the school about their daughter, the Doe's never requested such information. The school's representatives didn't use the name and pronouns that they were using for A.D. at school. They intentionally tried to mislead the parents by using the birth name and birth pronouns. Does that seem a concern? Do you see that as a concern at all? I disagree that it is. In fact, the Doe's spoke with A.D.'s counselor who, before speaking with the parents, talked to A.D. and asked if they could speak to her parents about her gender identity and her pronouns. And so I do think that the counselor who spoke with the Doe's was forthcoming, and that there was no attempt to mislead the parents. The record reflects two separate instances where there were conversations with the parents where the person that the parents spoke to used the birth pronouns, I'll call them, and name, as opposed to the name and pronouns that were currently being used at school. My recollection is that A.D. detransitioned in March of 2024, Your Honor, and after that, A.D. said that if conversations occurred after that date and references were made to she, her pronouns and her birth name, it was because she had chosen to resume using those of her own volition. Again, that's my recollection of the facts. Okay. If you're wrong, and the record is closer to what I'm saying, is that a violation of a substantive due process, right? If you affirmatively mislead the parents? I don't understand the chosen name law on its four corners. Again, that's the statute that's being challenged to require school districts to affirmatively mislead. If the district has chosen to do so, then perhaps it is a substantive due violation, due process violation against the district. It is not connected to the chosen name law. Thank you. You're over time. And since we went more over time, I will give you two minutes on rebuttal, trying to even it up. Just to be clear, in addition to the three I reserved? No, you used your three. Okay, very well. It's all in that 15. Very well, Your Honor. But that's a good try. To address the informational injury, Your Honor, counsel for the district admitted that if parents call up and their kids are being socially transitioned and have asked the parents not to be told, that the parents will not be told. If my clients were to pick up the phone right now and call the school and say, are my kids being socially transitioned? And the school said no. Parents have no way of knowing whether that's because their child says no, my parents are unsupportive or because the school is not socially transitioning them. They have no way to find that out from the district. That's the informational injury. In addition, we contend the Constitution requires the district to provide notice. We're not getting notice that the children are being socially transitioned. So we don't know whether that's because, again, the child has said the parents aren't supportive or because it's not happening. Back to the ongoing injury, I'd like to highlight, which we put in the very introduction of our opening brief, the all-clear case, in which Justice Alito dissented from the denial of certiorari. He basically said, he didn't basically say, he said lower courts are misreading Clapper when it comes to these school secrecy policies. He cited to the very section that I addressed earlier with regard to policies that regulate, constrain, or compel. As for the FERPA rights, the district seems to suggest that the parents can get around this informational problem by invoking FERPA. If you look at the toolkit, the toolkit says that children have FERPA rights against their parents. I believe that's a gross misreading of FERPA, but that's what the text of the policy says. So they're not going to overcome children's alleged FERPA rights in response to parent inquiries. And then finally, not every social transition requires documentation. FERPA is not about information, it's about documentation. And not every social transition requires the production of documentation. Thank you. Thank you, Your Honors.